UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60150-GAYLES/STRAUSS

**ASHLEY JOHNSON,**

    Plaintiff,

v.

**OFFICER STEVEN DAVIS,** *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon a Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") filed by Defendant, Gregory Tony ("Tony"), in his capacity as Sheriff of Broward County [DE 22].[1] This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 31]. I have reviewed the Motion, the Response [DE 24] and Reply [DE 25] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

**BACKGROUND**[2]

Plaintiff, Ashley Johnson ("Johnson"), "is presently incarcerated in Broward County Jail awaiting trial for her arrest March 7, 2020, by Broward Sheriff's Office" ("BSO"). [DE 17] at ¶ 5. Johnson was a passenger in a reported stolen vehicle. *Id.* at ¶¶ 11–12. BSO officers Steven

---

[1] The Motion only pertains to Count II of the Second Amended Complaint.

[2] For purposes of considering the Motion, the Court accepts the factual allegations in the Second Amended Complaint as true and views them in the light most favorable to Plaintiff. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

Davis ("Davis") and Sgt. Rafael A. Hernandez ("Hernandez") identified the vehicle Johnson was in and attempted to stop it. *Id.* at ¶ 12–14. However, the driver did not stop, and a police chase ensued. *Id.* at ¶ 14. At some point during the chase, an exchange of gunfire took place. *Id.* The vehicle eventually crashed, and Johnson exited the vehicle, followed police commands to lie down on the ground, and was arrested. *Id.* at ¶¶ 15–16. During her arrest, Davis, in full view of Hernandez, rested his body weight on Johnson's head as she laid prone on the ground which caused Johnson to suffer "serious fractures to her nasal cavity, eye socket, and cheek bone." *Id.* at ¶ 16. Additionally, Davis kicked Johnson in her jaw which left a permanent scar on her face. *Id.* at ¶ 17.

As a result of Davis' actions during the arrest, Johnson filed a civil action against Davis, in his individual capacity, Hernandez, and BSO. *See* [DE 1]. Johnson amended her complaint twice, and the Second Amended Complaint is the operative complaint before the Court now. *See* [DE 17]. In her Second Amended Complaint, Johnson brings forth five causes of action. First, Johnson alleges claims for excessive force (pursuant to 42 U.S.C. § 1983), battery, and intentional infliction of emotion distress claim against Davis. *Id.* Second, Johnson alleges a supervisory liability claim against Hernandez (pursuant to 42 U.S.C. § 1983). *Id.* Finally, Johnson alleges a claim against Tony, in his official capacity as Sheriff of BSO, for deprivation of 4th Amendment Rights in violation of 42 U.S.C. § 1983. *Id.* This final claim against Tony is the subject of this Motion. *See* [DE 22].

Johnson alleges Davis' action of putting his weight on Johnson, stomping her, and kicking her jaw, thereby causing serious facial injuries, is not an isolated incident of excessive force by officers of BSO. [DE 17] at ¶ 49. Johnson further alleges that BSO perpetuates a policy of covering up and ignoring officer use of excessive force, fails to train or discipline officers

regarding the use of appropriate force, and fails to supervise officers and train officers regarding the use excessive force. *Id.* at ¶¶ 51–52. In support of her allegations, Johnson alleges BSO knew Davis had a history of reports of excessive force and violations of rules and regulations of BSO. *Id.* at ¶ 56. Johnson points to eight instances where BSO disciplined Davis:

> A.   On March 25, 2003 Davis was reprimanded for violation of sheriff policy manual on the use of restraints and received a written reprimand.
>
> B.   In June 6, 2004 Davis was suspended for insubordination, obedience to orders and suspended.
>
> C.   In May 5[,] 2006 Davis was disciplined for lack of courtesy to the public.
>
> D.   In November 1, 2007 Davis was accused of conduct unbecoming an employee and for his response to resistance against civilians.
>
> E.   On January 21, 2008 Davis was counseled for violation of policies regarding searches and response to resistance against civilians.
>
> F.   In March 15[,] 2016 Davis was accused of conduct unbecoming an officer and violating complaint investigation procedure.
>
> G.   On December 20, 2017 Davis was suspended 10 days for conduct unbecoming an officer.
>
> H.   On March 7, 2020 Davis was accused violating deputy response options.

*Id.* Because Tony failed to adequately train and supervise his officers, like Davis, against the use of excessive force despite knowing BSO officers engaged in reckless conduct, Johnson alleges Tony's actions caused her injuries. *Id.* ¶¶ 55–62. In response, Tony filed the instant Motion. [DE 22].

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a

"formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

Tony raises several arguments in support of his Motion. Specifically, Tony argues that Johnson has failed to allege ratification of Davis' conduct sufficient to establish a § 1983 *Monell*

claim,[3] or adequately plead that Tony failed to train his officers appropriately. The Court agrees with Tony, and Count II of the Second Amended Complaint should be dismissed.

As the Supreme Court has previously noted, "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (alterations in original)). BSO is considered a municipal local government body that may be liable under 42 U.S.C. § 1983[4] if BSO "itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)); *Pellegrino v. Wengert*, 703 F. App'x 892, 895 (11th Cir. 2017). However, municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *see also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

"Instead, to impose municipal liability under § 1983, a plaintiff must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[4] 42 U.S.C. § 1983 provides, in pertinent part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Thus, in addition to demonstrating a violation of constitutional rights, a plaintiff must show "that 'action pursuant to official municipal policy' caused [his] injury." *Connick*, 563 U.S. at 60 (quoting *Monell*, 436 U.S. at 691). Satisfying the causation element requires a showing that the custom or policy at issue was "the 'moving force' behind the constitutional deprivation." *Gurrera*, 657 F. App'x at 893 (citing *Monell*, 436 U.S. at 690–94).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Therefore, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011).

### A. BSO's Policy or Custom of Use of Excessive Force

Tony argues that Johnson has failed to establish the requisite municipal policy or custom through a theory that Tony "ratified" Davis' conduct. It is unclear whether Johnson is asserting a "ratification" theory as Tony describes. Regardless, I agree that Johnson fails to adequately allege that Tony "ratified" Davis' use of excessive force and fails to adequately allege a policy or custom of allowing excessive force sufficient to state a *Monell* claim.

At the outset, Johnson uses the terms "tacit approval" and "ratified" twice within her Second Amended Complaint. *See* [DE 17] at ¶¶ 27, 57.[5] The use of these words in a *Monell* claim

---

[5] Specifically, Johnson alleges that "[t]he failure to act affirmatively to counsel correct, discipline suspend and or terminate DAVIS by BSO and those superiors in the line of command resulted in tacit approval by BSO of DAVIS (sic) improper reckless and unconstitutional behavior, and as

would typically indicate that a plaintiff is alleging a violation based on a theory of ratification. Municipality liability "on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002). "A policymaker's approval of an unconstitutional action can constitute unconstitutional [municipality] policy only when the policymaker 'approve[s] a subordinate's decision *and the basis for it*.'" *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (second alteration in original)).

Insofar as Johnson is alleging *Monell* liability on this type of "ratification" theory, *see* [DE 24] at 1 (citing *Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004)), the allegations in her Second Amended Complaint clearly fail to state a claim. "For [a] plaintiff[] to state a successful § 1983 claim against a municipality based on a ratification theory . . . 'they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis[.]'" *Garvie*, 366 F.3d at 1189 (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1175 n.12 (11th Cir.2001)). There are no allegations in the Second Amended Complaint indicating an opportunity for a "policymaker" to review Davis' decision to use the alleged force on Johnson or approve either than decision or its basis.[6]

---

such became a de facto official policy of BSO" and that by "[a]ccepting the word of officers as gospel and otherwise adopting justifications for officers' extreme and wanton conduct, BSO ratified, condoned and consented to rampant unlawful conduct including that of DAVIS." [DE 17] at ¶¶ 27, 57.

[6] To the extent Johnson's Response suggests that Hernandez's conduct constitutes "ratifying" or "actively endorsing or approving" Davis' conduct, [DE 24] at 1, Hernandez is not a policymaking official. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997) ("[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review.").

7

Despite Johnson's sparse use of the terms "tacit approval" and "ratified" within her Second Amended Complaint, distilled to their essence, Johnson's allegations are better understood as attempting to allege that Tony's persistent failure to take disciplinary action against officers who use excessive force effectively condoned their conduct, thereby establishing a "custom" within the meaning of *Monell*. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *Hawk v. Klaetsch*, 522 F. App'x 733, 736 (11th Cir. 2013). Understanding Johnson's allegations in this light, instead of interpreting Johnson's assertions in the way *Gattis*, *Praprotnik*, and *Garvie* use the phrase "ratify", accomplishes the goal of Federal Rule of Procedure 8 to construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e).

With that framing in mind, Johnson seemingly is alleging a custom of allowing or encouraging the use of excessive force.[7] As stated earlier, "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell*, 117 F.3d at 489. Essentially, in order to establish a "custom," a plaintiff must show a "persistent and wide-spread practice" of similar constitutional violations. *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). In this instance, the gravamen of Johnson's allegations is that Tony permitted a custom where officers were allowed to engage repeatedly in excessive force and abuse when arresting people within Broward County.

---

[7] The Second Amended Complaint has allegations hinting at a custom or policy of failing to discipline or a practice of negligent hiring. [DE 17] at ¶¶ 27, 52–53. But to the extent Johnson seeks to allege these theories, they are even less complete than the alleged custom of allowing excessive force.

8

Nonetheless, Johnson does not point to other officers within BSO who engaged in excessive force nor provide any other examples of officers using excessive force when arresting individuals.

Instead, Johnson uses conclusory allegations stating Tony maintained "a policy of covering up and or ignoring the known unlawful conduct of his officers including excessive uses of force in arresting people in the county." [DE 17] at ¶ 52. Johnson later alleges Tony failed to investigate "the extreme and wanton act of his officers" and it is a "policy practice and custom to limit investigations of" excessive force incidents "and other claims, by limiting and failing to fully investigate offices findings of no excessive force result." *Id.* at ¶ 57. Despite these allegations, Johnson never directs the Court to any other incident of excessive force or inadequate investigation nor provides any other specific support for these allegations.

In *Marantes v. Miami-Dade County*, 649 F. App'x 665 (11th Cir. 2016), the Eleventh Circuit affirmed the lower court's dismissal of a similarly inadequate *Monell* claim that failed to sufficiently allege Miami-Dade County "had a custom or policy of encouraging excessive force." *Id.* at 672–73. There, the plaintiff only pointed to two incidents of alleged excessive force – his arrest and a homicide involving the same officers that arrested him. *Id.* at 673. The Eleventh Circuit held those allegations did not show that Miami-Dade County had a longstanding and widespread practice of encouraging the use of excessive force. *Id.* Johnson's lack of allegations of specific prior incidents of excessive force beyond Davis' acts during her own arrest similarly fail to provide sufficient factual detail from which the Court could infer BSO had a longstanding and widespread practice of encouraging the use of excessive force. *See Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320, 1328–29 (S.D. Fla. 2018) (dismissing *Monell* claim when plaintiff's complaint was "devoid of factual allegations of incidents other than the one that involved the plaintiff").

9

Johnson appears to rely on Davis' individual history to suggest a custom of allowing excessive force. However, the allegations regarding Davis' past conduct fail to plausibly suggest that Tony has condoned the use of excessive force (whether specifically by Davis or by BSO officers more broadly). Johnson alleges bare conclusions that the failure of Tony and "those superiors in the line of command" to "discipline[,] suspend[,] and or terminate" Davis resulted in "tacit approval" of Davis' "reckless and unconstitutional behavior, and as such became a de facto official policy of BSO." [DE 17] at ¶ 27. Additionally, Johnson alleges that Tony "ratified, condoned[,] and consented to rampant unlawful conduct including that of" Davis when he accepted "the word of officers as gospel and otherwise adopting justifications for officers' extreme and wanton conduct." *Id.* at ¶ 57.

Even assuming Johnson could state a claim by pointing solely to prior conduct of the specific officer involved and how BSO addressed or failed to address that conduct,[8] Johnson's reliance on allegations of Davis' history is deficient for at least two reasons. First, there is no indication that any of the prior incidents to which Johnson cites involved excessive force. Johnson alleges Davis "was reprimanded for violation of sheriff policy manual on the use of restraints[,] . . . suspended for insubordination[,] . . . disciplined for lack of courtesy to the public[,] . . . accused of conduct unbecoming an employee and for his response to resistance against civilians[,] . . . counseled for violation of policies regarding searches and response to resistance against civilians[,] . . . accused of conduct unbecoming an officer and violating complaint investigation procedure[,] . . . suspended 10 days for conduct unbecoming an officer[,] . . . [and] accused [of] violating deputy response options." [DE 17] at ¶ 56. Without more specific details of the actual conduct involved,

---

[8] *See Gonzalez v. Israel*, No. 15-CIV-60060, 2015 WL 1143116, at *14 (S.D. Fla. Mar. 13, 2015) (compiling cases illustrating that prior related conduct by a single officer could establish that the municipality tacitly approved the officer's unconstitutional actions).

10

none of the vague categories of alleged offenses are sufficient for the Court to infer that they involved excessive force.

Second, Johnson's own allegations notably contradict at least some of her assertions. Johnson alleges Tony, and those superiors in the line of command, failed to "discipline[,] suspend[,] and or terminate" Davis thereby tacitly approving his "reckless and unconstitutional behavior." *Id.* at ¶ 27. But, Johnson alleges that Tony gave Davis a written reprimand "for violation of sheriff policy," suspended Davis "for insubordination," disciplined Davis "for lack of courtesy to the public," and suspended Davis for ten days "for conduct unbecoming an officer." *Id.* at ¶ 26. Thus, Johnson cannot plausibly allege Tony, and those superiors in the line of command, failed to "discipline[,] suspend[,] and or terminate" Davis when Johnson's own allegations indicate that Tony did in fact discipline and suspend Davis for his past behavior unrelated to this incident.

For the foregoing reasons, Johnson has failed to plausibly allege a *Monell* claim on the theory that Tony "ratified" Davis' use of excessive force or permitted a custom of use of excessive force.

### B. Failure to Train

Johnson also fails to adequately plead a *Monell* claim on the theory that Tony failed to train Davis. The Supreme Court has held that a municipality "can be liable under § 1983 for inadequate training of its employees." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Yet, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *Tuttle*, 471 U.S. at 823–24). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*,

11

489 U.S. at 388. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

Therefore, "when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights, the [municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. However, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. at 62. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Johnson's Second Amended Complaint fails to include sufficiently specific, non-conclusory allegations illustrating a "pattern of similar constitutional violations by untrained employees" or otherwise identifying a "course of training [that] is deficient in a particular respect." *Id.* Besides her own encounter, and the vague statement that Tony learned of an increase in excessive force, Johnson fails to allege any other incident of BSO officers using excessive force. Consequently, the Second Amended Complaint fails to sufficiently allege facts from which the Court could infer deliberate indifference from a failure to train. *See McCants v. City of Mobile*, 752 F. App'x 744, 748 (11th Cir. 2018) (affirming dismissal of plaintiff's deliberate indifference claim against a city when the plaintiff made conclusory allegations devoid of specific instances of widespread abuse within the police department); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); *McCarthy v. Baker*, No. 22-CIV-14350, 2023 WL 2652766, at *5–6 (S.D.

Fla. Feb. 10, 2023), *report and recommendation adopted*, No. 22-14350-CIV, 2023 WL 2646657 (S.D. Fla. Mar. 27, 2023).

Here, in her "General Allegations," Johnson conclusorily alleges ("upon information and belief") that Tony "made a conscious decision not to provide sufficient training and education to its deputies as to the lawful responses to post crisis situations and people who offer no resistance." [DE 17] at ¶ 30. In Count II, Johnson then alleges Tony breached his duty of supervision when he "failed to meaningfully train and or discipline his officers with respect to use of appropriate force during police citizens encounters even after learning of the steady increase in use of excessive force against citizens." *Id.* at ¶ 52. Yet Johnson does not allege anything specific from which the Court could infer a "steady increase" existed, over what time it existed, the extent to which it involved BSO officers (as opposed to other law enforcement in other jurisdictions), or how Tony learned of the "steady increase." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 n.21 (11th Cir. 2015). These bare bones allegations continue throughout Count II of Johnson's Second Amended Complaint. For example, Johnson goes on to allege that BSO "with deliberate indifference, failed to adequately train and otherwise supervise and direct its officers concerning the rights of citizens they encounter in their duties, such that it is a policy, practice and custom for officers, including [Davis], to take extreme actions recklessly against citizens they encounter and even Johnson." [DE 17] at ¶ 54.

Johnson asserts Tony was on notice, because of a "history of widespread abuse, of the need to correct the extreme and reckless conduct of officers like" Davis. *Id.* at ¶ 55. The only remotely specific allegation Johnson makes to substantiate this claim that BSO has a "history of widespread abuse" and that this history made Tony aware of the need for better training, is Johnson's assertion that "BSO admitted the department needed a reset" with the citation: "SEE NEWPAPER (sic)

13

ARTICLE." *Id.* However, Johnson did not attach any newspaper article to her Second Amended Complaint, nor provide any further description of the article or the facts it would demonstrate, thereby preventing the Court from extrapolating any facts from it.

Nor does Johnson's Second Amended Complaint contain any specific factual allegations of similar constitutional violations by untrained officers that would alert Tony of a deficiency in training (and infer a deliberate indifference to citizens' constitutional rights from a failure to address that deficiency). Throughout her Second Amended Complaint, Johnson only references her single encounter with Davis while vaguely and conclusorily stating Tony permitted other similar incidents throughout BSO.[9] For example, she alleges that "the actions of Defendant Davis, fracturing plaintiff's face by stomping her, are not an isolated incident of excessive force by officers of BSO," *id*. at ¶ 49, but makes no specific factual allegations identifying other such incidents.

These allegations alone are insufficient to infer the existence of a pattern of tortious conduct to satisfy the "stringent standard" requiring proof that Tony disregarded a known or obvious consequence of his action. *See Brown*, 520 U.S. at 408, 410 (1997); *Jackson v. Miami-Dade County*, No. 18-CV-20664, 2018 WL 5787247, at *11 (S.D. Fla. Nov. 5, 2018) (conclusory allegations that County knew of need for training and supervision based on unspecified widespread complaints of excessive force were insufficient to find claims plausible); *see also Gaviria v. Guerra*, No. 17-23490-CIV, 2018 WL 1876124, at *6–7 (S.D. Fla. Apr. 19, 2018); *Hoti v. Garten*, No. 18-CV-80657, 2021 WL 3482979, at *9–10 (S.D. Fla. July 21, 2021), *report and*

---

[9] To the extent Johnson relies on her allegations of Davis' prior conduct, those allegations are insufficient to allege a failure to train claim. As explained above, the allegations and discipline history Johnson points to in her Second Amended Complaint, *see* [DE 17] at ¶¶ 25–26, lack specific factual assertions elucidating that those prior incidents involved excessive force or any conduct sufficiently similar to Johnson's encounter with Davis that would put BSO on notice of a deficiency in training in avoiding excessive force.

*recommendation adopted*, No. 9:18-CV-80657, 2021 WL 3473245 (S.D. Fla. Aug. 6, 2021); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1269–73 (S.D. Fla. 2015).

Accordingly, Johnson has not sufficiently pled a viable *Monell* claim, and Count II of her Second Amended Complaint should be dismissed with prejudice.[10]

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 22] be **GRANTED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 19th day of January 2024.

Jared M. Strauss
United States Magistrate Judge

---

[10] Dismissal with prejudice is appropriate in this scenario because Johnson has already made two amendments to her complaint and is represented by counsel. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 931 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so.").

15